

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL EUGENE CALHOUN,

   Petitioner,

vs.

HEIDI WASHINGTON,

   Respondent.
_____/

Case: 2:20-cv-11548
Judge: Edmunds, Nancy G.
MJ: Morris, Patricia T.
Filed: 06-02-2020 At 10:55 AM
HC SAMUEL EUGENE CALHOUN V HEIDI WASHINGTON (SS)

## EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Petitioner Samuel Calhoun, In pro se, respectfully states:

1. Mr. Calhoun is a citizen of the United States, is a resident of Muskegon County, Michigan, and is currently imprisoned in Muskegon, Michigan.

2. Mr. Calhoun is currently unconstitutionally detained and imprisoned by the Respondent, Heidi Washington, Director of the Michigan Department of Corrections, where Mr. Calhoun is serving a paroable life sentence imposed by judge Casper O. Grathwhol of the Berrien County Circuit Court, after a jury found Mr. Calhoun guilty of 1 Count of CSCI.

3. Petitioner has exhausted all state remedies available to him with regard to the Eighth prohibition against cruel and unusual punishment issue raised in this petition by taking the following steps:

  a. Petitioner has attempted to contact the Respondent by letter addressed to her office. Who is the Director of the Michigan Department of Corrections, asking to be released from his lawful confinement, due to the

COVID-19 virus being prevalent in the correctional facilities across the State of Michigan, that poses an imminent danger of irreparable harm to both Petitioner's health and his life with regard to his preexisting health conditions.

4. As set forth in the accompanying Memorandum of Law, Samuel Calhoun is being detained in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

5. Samuel Calhoun has not filed any previous Petition for Writ of Habeas Corpus in this or any other federal district court.

## RELIEF REQUESTED

For these reasons, Petitioner Samuel Calhoun, asks:

A. That Respondent be required to appear and answer the allegations of this Petition;

B. That after full consideration, this Court grant this Petition and order that Samuel Calhoun either be promptly retired or released from custody;

C. That this Court grant such other, further, and different relief as the Court may deem just and proper under the circumstances; and

D. That this Court grant an appointment of counsel and oral argument in this matter.

Respectfully submitted,

By: _____
Samuel Calhoun #379175
Petitioner In pro se
Muskegon Correctional Fac.
2400 S. Sheridan Drive
Muskegon, MI  49442

Date: May 29, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL EUGENE CALHOUN,

    Petitioner,                                    Civil Action No.

vs.

HEIDI WASHINGTON,

    Respondent.
_____/

MICHIGAN ATTORNEY GENERAL OFFICE
DANA NESSEL

SAMUEL E. CALHOUN #379175
IN PRO SE
Muskegon Correctional Fac.
2400 Sheridan Drive
Muskegon, MI 49442

MEMORANDUM OF LAW IN SUPPORT OF
PETITON FOR WRIT OF HABEAS CORPUS

## TABLE OF AUTHORITIES

United States Supreme Court Cases

Brown v. Allen, 344 U.S. 433............................................ 9

Framer v. Brennan, 511 U.S. 825, 831; 114 SCt. 1970, 1975 (1994).... 9,10,11

Helling v. McKinney, 509 U.S. 25, 34; 113 SCt. 2475, 2481 (1993)......... 10

McLeskey v. Zant, 499 U.S. 478; 111 SCt. 1454, 1457 (1991)............... 9

Yow v. United States, 208 U.S. 8, 13; 28 SCt. 201 (1908).................. 9


Sixth Circuit Cases

Dominguez v. Corr. Med. Servs., 555 F3d 543, 550 (6th Cir. 2009)......... 10


Other Circuit Court Cases

Johnson v. Johnson, 385 F3d 503, 524 (5th Cir. 2004)..................... 10

Mitchum v. Hunt, 73 F3d 30, 35 (3rd Cir. 1995)........................... 9

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................. i

STATEMENT OF QUESTIONS PRESENTED...................................... ii

STATEMENT OF JURISDICTION OF THE COURT................................ iii

STATEMENT OF FACTS.................................................... 1

ARGUMENT:

I.  RESPONDENT VIOLATED MR. CALHOUN'S EIGHTH AMENDMENT RIGHTS BY SUBJECTING HIM TO A SUBSTANTIAL RISK OF SERIOUS HARM POSED BY THE COVID-19 VIRUS, WHICH IS PREVALENT IN THE MICHIGAN DEPARTMENT OF CORRECTION'S FACILITIES ACROSS THE STATE............................................................. 7

    A.    PETITIONER HAS AN EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT............................ 9

CONCLUSION............................................................ 12

APPENDIX A (MDOC Up-To-Date Information of Coronavirus)

## QUESTION(S) PRESENTED

I.   DID RESPONDENT VIOLATE MR. CALHOUN'S EIGHTH AMENDMENT RIGHTS BY SUBJECTING HIM TO A SUBSTANTIAL RISK OF SERIOUS HARM POSED BY THE COVID-19 VIRUS, THAT WAS PREVALENT IN THE MICHIGAN DEPARTMENT OF CORRECTION'S FACILITIES ACROSS THE STATE?

A.   DOES PETITIONER HAVE AN EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT?

## JURISDICTION OF THE COURT

This Court has subject matter jurisdiction over this case pursuant to Article 1 § 9, cl. 2 of the U.S. Constitution (Suspension Clause); the prohibition against cruel and unusual punishment of the Eighth Amendment to the U.S. Constitution; 28 U.S.C. § 1331(federal question); 28 U.S.C. § 1651 (All Writs Acts); and 28 U.S.C. § 2241 (habeas corpus).

iii

## STATEMENT OF FACTS

The Petitioner Samuel Calhoun, was committed to the Michigan Department of Corrections on September 17, 2001, at the age of 36 years old, after being found guilty by a jury and sentenced by the Berrien County Circuit Court to serve an enhanced parolable life sentence.

Petitioner is now 57 years old and has suffered with lung complications from exposure to tuberculous since he was 19 years old. This condition has left him with 80% lung capacity in his left lung and a spot on his lung about the size of a nickle. Petitioner also suffers from the following conditions, a few of which places him at an high risk of dire consequences if he should contract the COVID-19 virus: bronchitus, sickle cell, essential primary hypertension, pain, degenerative arthritis and fibromyalgia.

The exceptionally dangerous nature of the COVID-19 pandemic became apparent to state officials when Governor Whitmer announced the state's first two cases of COVID-19 and simultaneously declared a State of Emergency, Executive Order, No. 2020-4 (Mar. 10, 2020). As of May 27, 2020, there has now been 55,608 confirmed cases of COVID-19 and 5,334 known related deaths, with 17.2 cases being confirmed in west michigan per day for every 100,000 people. And more than 3,968 confirmed cases and 91 known related deaths within the Michigan Department of Corrections system specifically. See Coronavirus, Michigan.gov. https://www.michigan.gov/coronavirus/0,9753,7-406-98163-520743--,00.html. COVID-19 has a high risk of transmission, and the number and rate of confirmed cases indicate broad

1.

community spread. Executive Order, No. 2020-20 (Mar. 22, 2020).

Now the State of Michigan is currently leading the nation in the number of prisoner deaths according to a recent study released by the Marshall Project, a nonprofit journalism group that focuses on criminal justice issues and the pandemic's impact on prisoners. This disease is being transmitted from person to person throughout Michigan's correctional facilities at an increasingly alarming rate. Where, just as of May 14, 2020, the Marshall Project reported that there were 2,073 reported confirmed cases in Michigan prisons, and 47 prisoner deaths, and as of the date of this motion those numbers has practically doubled since then.

On March 22, 2020, Governor Whitmer issued the following statement: "The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. There is currently no approved vaccine or antiviral treatment for this disease." Executive Order, No. 2020-20 (Mar. 22, 2020).

On March 23, 2020, Governor Whitmer issued a broad "stay-at-home" order in order to try to curtail the spread of COVID-19. Under her executive powers extending her stay-at-home order twice now since the date of its implementation due to the coronavirus's contagious nature and deadly affect. Executive Order 2020-1 (Mar. 23, 2020). Under Executive Order 20-21, "all public and private gatherings of any number of people occurring among persons not part of a single household are prohibited." Id. This restriction will be impossible to accomplish in a prison, which was not designed or built for such limitations.

Less than 2 weeks after Governor Whitmer's declared State of Emergency. The headlines read: COVID-19 has now spread to Michigan's prisons. First Michigan Prisoner Tests Positive for Coronavirus, Detroit Free Press (March 23, 2020). As of March 23rd, three MDOC employees have also tested positive for COVID-19. Id. Given the way the virus has so quickly spread around the world, the country, and the state, it is not an unreasonable expectation for state and federal officials to believe the same would happen within the dense populated correctional facilities of the Michigan Department of Corrections (MDOC), as it has already begun. In every real sense, prisoners are a petri dish to a pandemic and doing noting is ethically irresponsible.

According to the Centers for Disease Control and Prevention (CDC), social distancing "means remaining out of congregate settings, avoiding mass gatherings, and maintaining distance (approximately 6 feet or meters) from others when possible," See www.CDC.gov. The exact opposite of everyday life in a prison environment. Social distancing is virtually impossible to accomplish in a prison, which was not designed or built to provide individual prisoners this amount of individual space.

On March 23, 2020, the Center for Disease Control (CDC) acknowledges that prison confinement conditions create a serious risk for the spread of COVID-19, even among a healthy population. Intrim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, CENTER FOR DISEASE CONTROL (March 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-dentention/guidance-correctional-dentention.html.

3.

On March 27, 2020, the President of the United States declared a COVID-19 emergency under the National Emergencies Act, inter alia, also mandating courts to consider tne public health factors arising out of the present public health emergency to mitigate the spread of COVID-19, as the Judicial Conference determined that this emergency will materially affect the functioning of the Federal courts generally. CARES Act § 15000.

Though the CDC has recommended public health guidance for correctional facilities, and though the Muskegon Correctional Facility (MCF) has implemented measures designed to prevent spread of the disease, these measures are inadequate and are redundant at best to sufficiently decrease the substantial likelihood that Petitioner will not contract COVID-19. The double bunking, communal toilets, sinks, showers, kioski, phones and eating in communal spaces in close contact with other prisoners and officers, and Petitioner's involuntary interaction with purportedly asymptomatic guards who rotate shifts is a significant exposure factor, which creates an "imminent scenario" where rapid outbreak is extremely likely, and extremely likely to lead to deadly results, as it happened with the recent outbreaks at Lakeland Correctional Facility in April 2020, where there were more than 767 confirmed cases of COVID-19 between mid-March and late-April and Gus Harrison Facility, with 612 confirmed cases of COVID-19 between Mid-March to Mid-May. See MDOC Up-To-Date Information Regarding COVID-19 Pandamic from the Months of April through May 2020, attached as Exhibit A. See also, How COVID-19 Spreads, CDC (Apr. 3, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covidspreads.html? CDC_AA_refVal=ttps%3A%2Fwww.cdc.gov%2 Fcoronavirus%2F2019-ncov%2Fprepare%2Ftransmission.html.

At the rate of spread in which the COVID-19 virus was transmitted from person to person among the prisoners confined in the dense populated environments at Lakeland and Gus Harrison correctional facilities. In light of Petitioner's preexisting health conditions, which places him at a substantial high risk of contracting coronavirus. It is clear and obvious to both state and federal officials that Petitioner's continued confinement poses an imminent threat of irreparable harm to both Petitioner's health and to his life; and there is set of conditions of confinement sufficient to prevent irreparable constitutional injury in light of the COVID-19 virus.

While the steps taken by MCF to prevent the introduction and spread of the coronavirus into the facility are commendable with respect to the screening of incoming shifts for high temperatures before they are allowed to come on to the premises. Such measures are still insufficient to stem the spread of disease, as COVID-19 spreads asymptomatically. Just as prison officials are beginning to recognize around the country, that even the most stringent precautionary measures-short of limiting the incarcerated population itself-simply cannot protect prisoners from the extremely high risk of contracting this unique and deadly disease. For example, on April 1, 2020, the Rikers Island jail complex's chief physician acknowledged that "infections are soaring" despite the facility's "following Centers for Disease Control and Prevention guidelines and having moved mountains to protect our patients." Miranda Bryant, Coronavirus Spread at Rikers is a 'Pub. Health Disaster', Says Jail's Top Dir., The Guardian (April 1, 2020), https://www.theguardian.com/us-news/2020/apr/01/rikers-island-jailcoronavir us-public-health-disaster. See also e.g., New York City Board of Corrections

5.

Calls for City to Begin Releasing People from Jail as Part of Public Health Response to the COVID-19 virus N.Y.C. Board of Corrections (March 17, 2020) https://www1.nyc.gov/assets/boc/downloads/pdf/News/2020.0317%20-%20Board%20of%20Correction%20Statement%20re%20Release.pdf (arguing that, despite the "heroic work" of Department of Correction and Correctional Health Services staff "to prevent the transmission of COVID-19 in the jails and maintain safe and humane operations, the City must drastically reduce the number of people in jail right now and limit new admissions to exceptional circumstances.").

To save lives and slow the spread of COVID-19. In addition, the CDC recommended to people who are over 60 years of age and those who suffers with chronic health conditions, such as heart disease, diabetes, and lung disease, take special precautions and isolate themselves as much as possible due to their susceptibility to the disease. See Centers for Disease Control, Groups at Higher Risk for Severe Illness, (April 2, 2020). https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/groups-at-higher-risk.html (nothing that "people of all ages with underlying medical conditions are at higher risk for severe illness, particularly if the underlying medical conditions are not well controlled").

Petitioner meets the criteria set forth by the CDC for those individuals who are part of the high risk group for contracting the COVID-19 virus.

**ARGUMENT**

**I. RESPONDENT VIOLATED MR. CALHOUN'S EIGHTH AMENDMENT RIGHTS BY SUBJECTING HIM TO A SUBSTANTIAL RISK OF SERIOUS HARM POSED BY THE COVID-19 VIRUS, WHICH IS PREVALENT IN THE MICHIGAN DEPARTMENT OF CORRECTION'S FACILITIES ACROSS THE STATE.**

<u>Summary of Argument</u>

Petitioner does not so much as challenge the conditions of his confinement as he does the validity of his continued confinement under the current circumstances which exist. Where there is an imminent threat of irreparable harm to both Petitioner's health and his life posed by COVID-19. Because the deadly COVID-19 virus is currently prevalent throughout the correctional facilities of the Michigan Department of Corrections (MDOC), there are no set of conditions of confinement sufficient to prevent irreparable constitutional injury to Petitioner under the circumstances. Moreover, Petitioner has an Eighth Amendment right to be free from cruel treatment and conditions of confinement.

Although the Muskegon County Facility (MCF) has taken steps to trying mitigate the spread of the virus. Even those measures are inadequate to sufficiently decrease the likelihood that Petitioner will not contract the virus. Specially since COVID-19 is spread through asymtomatic carriers. Unfortunately, the only defense Petitioner has against COVID-19 is social distancing and stern hygiene practices. Neither of which are possible to accomplish in the dense populated prison environment at MCF. The concept of practicing social distancing of at least six feet is virtually impossible when the facility in which Petitioner is confined was not designed or built to allow prisoners that type or degree of personal space; considering the

7.

double bunking of prisoners and enclosed communal living spaces. In addition to all things. Petitioner's preexisting health conditions places him at an high risk of contracting the disease which outcome could have dire consequences for him.

Petitioner maintains that, the only adequate relief for him is to be released from confinement for the duration of the state's public health crisis and until the confinement conditions at the correctional facilities across the state are constitutionally adequate. As Petitioner's continued confinement in the custody of the MDOC under the current conditions, not only violates the Eighth Amendment's prohibition against cruel and unusual punishment, but also has the potential to become an unjust and inhuman death sentence for Petitioner.

A.   **PETITIONER HAS AN EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT.**

Since 1867, the statute enacted by Congress grant federal courts the power to recognize and grant habeas corpus as the vehicle through which a prisoner held in state custody may challenge the fact of there confinement. Act of Feb. 5, 1867, ch28, § 1, 14 Stat. 385; see also Mitchum v. Hunt, 73 F3d 30, 35 (3rd Cir. 1995). The writ extends to all dispositive constitutional claims presented in a proper procedural manner. See Brown v. Allen, 344 U.S. 443; McLeskey v. Zant, 499 U.S. 478; 111 SCt. 1454, 1457 (1991)(The Judiciary Act, of 1789, ch 20 § 14, 1 Stat. 81-82). See also Chin Yow v. United States, 208 U.S. 8, 13; 28 SCt. 201 (1908)("Habeas Corpus is the usual remedy for unlawful imprisonment.").

In the instant petition, Respondent, who is the Director of the Michigan Department of Correction and has the ultimate say over matter concerning prisoners and their confinement conditions at the Muskegon County Correctional Facility. Mr. Calhoun maintains that, in subjecting him to confinement conditions that amounts to cruel and unusual punishment and which fails to ensure his safety and health; is subjecting him to a substantial risk of serious harm with respect to the COVID-19 virus and thus, violates his Eighth Amendment rights to the United States Constitution. U.S. Const. Am VIII; Const., 1963, Art. 1 § 16. See Farmer v. Brennan, 511 U.S. 825, 831; 114 SCt. 1970, 1975 (1994)(describing an 8th Amendment claim as a failure to prevent harm).

Here, Respondent knew or should have known for months now about the dangers posed by COVID-19 and that the virus was prevalent throughout the

9.

correctional facilities across the state and moreover, that Petitioner's continued confinement under such conditions exposes him to a substantial risk of serious harm. Johnson v. Johnson, 385 F3d 503, 524 (5th Cir. 2004)("The official's knowledge of the risk can be proven through circumstantial evidence. such as by showing that the risk was so obvious that the official must have known about it."); see also Farmer, 511 U.S., at 840; 114 SCt., at 1980, (stating that the "concept of constructive knowledge is familiar enough that the term 'deliberate indifference' would not, of its own force, preclude a scheme that conclusively presumed awareness from a risk's obviousness."). In other words, this Court may conclude that officials was aware of the risk if the risk was obvious. See also Dominguez v. Corr. Med. Servs., 555 F3d 543, 550 (6th Cir. 2009).

The fact that Petitioner has not tested positive for the COVID-19 virus is irrespective of the fact that there is an imminent health risk posed by COVID-19 at MCF and Petitioner is in the category of people identified to be at a higher risk for serious health consequences if he were to contract the virus. See e.g. Helling v. McKinney, 509 U.S. 25, 34; 113 SCt. 2475, 2481 (1993)("[A] prisoner need not wait until he is actually assaulted before obtaining relief ....[T]he Eighth Amendment protects against sufficiently imminent dangers as well as current unnecessary and wanton infliction of pain and suffering.").

The stark reality of this global public health crisis is that, in the face of a deadly pandemic with vaccine, no cure, limited testing capacity, and the ability to spread quickly through asymptomatic human vectors. Any "generalized risk" is a "substantial risk" of catching the

Nonetheless, Respondent has simply choose to ignore and disregard that risk Petitioner and the countless other unforetold number of prisoners who have lost their lives in the custody of the MDOC since the introduction of the deadly virus into dense populated prison environments across the state, which death toll is still rising.

Petitioner submits that, he is incarcerated under conditions posing a substantial risk of serious harm, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. See e.g., Farmer, 511 U.S., at 843; 114 SCt., at 1982 (1994) ("The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health,' and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Therefore, the writ should issue.

## CONCLUSION

For these reasons, Petitioner Samuel Calhoun asks that this Court order his immediate release from Respondent's custody on his own recognizance for the duration of this public health crisis that is ubiguitous across the state and in the correctional facilities of the Michigan Department of Corrections and until said facilities no longer pose an imminent threat of irreparable constitutional injury to Mr. Calhoun, as it relates to COVID-19.

Respectfully submitted,

Samuel E. Calhoun #379175
Petitioner In pro se

Muskegon Correctional Fac.
2400 S. Sheridan Drive
Muskegon, MI  49442

Date: May 29, 2020

